## DALLAS RY. & TERMINAL CO. v. ALLEN.

### No. 10867.

Court of Civil Appeals of Texas. Dallas.
Oct. 17, 1931.

Rehearing Denied Nov. 14, 1931.

Worsham, Rollins, Burford, Ryburn & Hincks, of Dallas, for appellant.

Carden, Starling, Carden & Hemphill, of Dallas, for appellee.

LOONEY, J.

Moss G. Allen, appellee, sued Dallas Railway & Terminal Company, appellant, to recover damages for personal injuries growing out of a collision between a fire truck, upon which plaintiff was riding, in the discharge of duty as fireman, and one of appellant's street cars. The collision took place at the intersection of Haskell avenue and Main street, in the city of Dallas, while the fire truck was going south on Haskell and the street car was traveling west on Main. The city had installed a signal system for the control of vehicular and pedestrian traffic at the point of collision, by the use of red, green, and yellow lights. The street car entered the intersection, just before the collision, on a green light, whilst the fire truck entered with a red light exposed. The issues joined are sufficiently indicated by the findings of the jury as follows, to wit: That the failure of the motorman to stop the street car until the fire apparatus had passed, as required by section 31 of the Ordinance of the City of Dallas, was a proximate cause of the collision; that it would have appeared to the motorman, from the approach of the fire apparatus, if he had exercised ordinary care, that there would probably be a collision, which he could have averted by yielding the right of way across Main street to the fire truck, and that the failure of the motorman to so yield was a proximate cause of the collision; that the motorman was negligent in the matter of keeping a lookout for the approaching truck, and that the same was a proximate cause of the collision; that the motorman was negligent in failing to hear the sound of the siren on the fire truck as it approached the intersection, and that such negligence was a proximate cause of the collision.

On the defensive issues, the jury found that plaintiff did not fail to exercise ordinary care with respect to looking and listening for the approach of the street car; that the fire truck was not being driven at a fast and dangerous rate of speed just prior to the collision; that at the time the fire truck started south across Main street there was displayed a red signal light against south-bound traffic on Haskell avenue; that in the exercise of ordinary care plaintiff could have prevented the driver of the fire truck from

attempting to cross Main street against the red light, but in this connection the jury also found that plaintiff did not fail to exercise ordinary care in this respect, and that he did not fail to exercise ordinary care with respect to warning the driver that there was a red signal light opposing him at the intersection; that plaintiff was not so situated on the fire truck that he could have had the driver check its speed earlier than was done prior to the collision; that plaintiff could not have had the driver steer the truck further to the left so as to avoid striking the street car; that plaintiff did not fail to exercise ordinary care with respect to warning and directing the driver of the truck to turn to the left, or easterly, on Main street sufficient to pass the rear of the street car; that the fire truck was being driven under control at the time it approached the intersection; that plaintiff did not fail to exercise ordinary care with respect to advising the driver of the truck of the approach of the street car; that the driver of the truck did not fail to exercise ordinary care with respect to keeping a lookout for the street car at the time and place in question, nor with respect to hearing or heeding the gong or signal given on the street car, nor with respect to keeping a lookout for the signal light at the intersection, nor in driving the truck into Main street against a red light, nor in driving at the rate of speed the truck was being driven at and just prior to the time of the collision, nor with respect to steering the truck to the left so as to avoid collision with the street car.

These findings were based on conflicting evidence and are adopted as our conclusion of fact. From a judgment for $2,708, in favor of appellee, appellant, prosecutes this appeal.

A contention of appellant permeating all material propositions urged for reversal is to the effect that, under the traffic ordinance of the city of Dallas, the street car had the right of way, and that the fire truck entered and was attempting to cross Main street in violation of law at the time of the collision.

It is undisputed· that, at the time the fire truck started across Main street, there was displayed against it a red light and that the street car entered the intersection and was in the act of crossing on a green light when the collision occurred. The provisions of the traffic ordinance relied upon by appellant for its contention are sections 1 and 38, as follows:

"Sec. 1. That by the term 'signal system' as used herein, means a system of controlling traffic, both vehicular and pedestrian, by the use of lights as follows: red lights, green lights and yellow lights. The display of red signal lights means for pedestrians and vehicular traffic to stop. The display of yellow signal lights means to announce that pedestrian and vehicular traffic must be at attention for movement until the green light is displayed, which means for pedestrian and vehicular traffic to promptly move forward."

"Sec. 38. (a) When a red light is displayed at any intersection, vehicles on the streets along which and on which it is displayed shall stop before entering the street intersection, and before passing the property line at such intersection and before entering the crosswalk, and pedestrians shall stop on a sidewalk or curb before entering the driveway or entering the crosswalk leading from one curb to opposite curb.

"When a green light is displayed at a street intersection, traffic shall move forward into the intersection and on the street along which the green light is displayed. Traffic as here used shall include both vehicles and pedestrians.

"(b) When a green light is displayed along a street, traffic shall move forward with the light and vehicles may turn to the right into the intersecting street or continue straight ahead across the intersection, but vehicles shall only be permitted to turn off of such street and to the left and into the intersecting street when a sign is displayed in connection with such signal lights, which sign authorized a left hand turn. * * *

"The word 'vehicle' herein used, shall include all means of travel other than pedestrian.

"(d) No vehicle shall ever proceed into the intersection at a street intersection when the red light is displayed toward such person except where a sign is displayed in connection with the signal light which authorized a right hand turn upon a red light being displayed. In such event a vehicle may proceed into the intersection and turn to the right, but must not proceed past the center of the intersection to make such right hand turn.

"(e) Any person who shall walk or ride or drive, or aid, abet or encourage another to walk, ride or drive into or across any street intersection contrary to the signal lights at such intersection, or who shall walk, ride or drive, encourage or abet anyone else to walk, ride or drive in violation of the terms of this ordinance, or so as to violate any of the signals or meaning of such signals, as expressed in this ordinance, shall be guilty of an offense and upon conviction in the Corporation Court shall be fined any sum not exceeding $200.00."

Appellant's insistence is that, in view of the uncontradicted evidence and of the controlling effect of the signal ordinance, the verdict of the jury· is not supported, and that the judgment entered should be set aside. This contention is made notwithstanding the provisions of section 31 of the traffic ordinance, and of subdivision (N) of article 801 of the Penal Code. Section 31 of the Traffic Ordinance of the City of Dallas reads as follows:

"Sec. 31. The following vehicles. in the order named, shall have the right of way in the use of all streets and public places within the City of Dallas, viz.: apparatus of the fire department, police patrol wagons, police automobiles and police motorcycles on official city business, or when discharging proper police errands, ambulances responding to emergency calls, emergency repair wagons of the electric light, gas and street railway companies, and United States mail wagons when in service as such. Street cars shall have the right of way between cross streets over all vehicles except those hereinabove mentioned, and the driver of any vehicle, except those hereinabove mentioned, proceeding upon the track in front of the street car shall promptly turn out upon signal of the motorman. The driver of a vehicle on the approach of apparatus of the fire department and emergency ambulances shall immediately draw said vehicle as near as practicable to the right hand curb and parallel thereto and bring his vehicle to a stop. The motorman operating a street car shall, on the approach of apparatus of the fire department or ambulance, immediately bring his car to a stop until said apparatus has passed."

Subdivision (N) of article 801 of the Penal Code provides that: "Police patrols, police ambulances, fire patrols, fire engines and fire apparatus in all cases while being operated as such shall have the right-of-way with due regard to the safety of the public; provided that this provision shall not protect the driver or operator of any such vehicle or his employer or principal from the consequence of the arbitrary exercise of this right to the injury of another."

The position of appellant, concretely stated, is that its street car was at the time of the collision proceeding across Haskell avenue on a green light, and had the right of way under the traffic ordinance; that the fire truck was forbidden to cross Main street on a red light, and since it was undisputed that the motorman did not in fact know of the approach of the fire truck, or know of its proximity to the street intersection, no duty rested upon him, therefore the proximate cause of the collision was the negligence (per se) of appellee and of the driver of the truck; and, furthermore, that subdivision (N) of article 801 of the Penal Code, neither expressly nor by necessary implication, repealed or abrogated the pertinent provisions of the traffic ordinance. That the above correctly interprets the position of appellant is apparent from an excerpt from its brief, as follows: "We have a case where there was a plain violation of the city ordinance. The jury found that there was a violation of the city ordinance because they found the light was red against the fire apparatus. They also found that the appellee could have prevented the driver from attempting to cross Main

Street against a red signal. If the ordinance had not been violated in this respect, there would have been no collision. As a matter of law, such negligence became the proximate cause and the sole proximate cause of the collision. The attorneys for the appellee in the trial court, as will be observed, tried this case as if the ordinance as to signals was either invalid or was not effective under the circumstances, and that the matter was controlled by the State statute (article 801 (N), of the Penal Code) giving the fire apparatus the right of way. It has been repeatedly held that municipal ordinances governing traffic are operative unless they are repealed either directly or by necessary implication by state statute on the subject. There is no provision in the State statute which repeals this ordinance. * * *"

We fail to find any conflict between the traffic ordinance and the general law on the subject, as both enactments confer on fire fighting apparatus, engaged as such, the right of way, in the use of all streets and public places of the city. The plain and unambiguous provisions of section 31 of the Traffic Ordinance, copied above, give priority to apparatus of the fire department in the use of all streets and public places within the city, over street cars and other vehicular traffic, and make it the duty of the motorman operating a street car, on the approach of such apparatus, to immediately bring his car to a stop until the apparatus has passed. The provisions of the Penal Code confer upon fire patrols, fire engines, and fire apparatus, in all instances, while being operated as such, priority in the use of the right of way over street cars, with the admonition that such priority shall be exercised with due regard to the safety of the public. As stated above, we find no conflict between the ordinance and the Penal Code on the subject, but even if the ordinance could be given the meaning attributed to it by appellant, it would have to yield in this respect to the superior authority of the general law on the subject. Section 5 of article 11 of the Constitution (the home rule amendment) provides: "Cities having more than five thousand (5000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State. * * *" McCutcheon v. Wozencraft, 116 Tex. 440, 294 S. W. 1105; City of Beaumont v. Fall, 116 Tex. 314, 291 S. W. 202, 205, 206. We hold, therefore, that the fire truck, on the occasion in question, had priority over the street car in the use of Main street, hence overrule appellant's con-

tention that, as a matter of law, plaintiff and the driver of the truck were negligent. All assignments and propositions based upon this conception of appellants as to the meaning and effect of the traffic ordinance and the Penal Code are overruled.

▆ Appellee requested and the court gave the following instruction to the jury, viz.: "You are instructed that the statutes of the State of Texas, in force at the time of the collision in question, and now in force, give to fire apparatus, while being operated as such, the right of way with due regard to the safety of the public, but this right cannot be arbitrarily exercised to the injury of another. Such right of way extends to all streets and street intersections in the City of Dallas, and such right of way exists notwithstanding the ordinance of the City of Dallas set out in the defendant's answer; and you are further instructed that such ordinance so set out conferred upon the defendant no right of way at any time, or under any circumstances against such fire apparatus. You are further instructed that this and the other special requested charges which are given you by the court are a part of the law of this case, the same as if they were included in the Court's main charge, and you will be governed thereby."

Appellant objected to the instruction, and has assigned error on its being given, on the following grounds, to wit, that it is in effect a general charge and upon the weight of the evidence, and in telling the jury, in effect, that the signal ordinance could not be considered in determining the negligence of either party, and conferred no right upon appellant at any time, or under any circumstances, against the fire apparatus, was upon the weight of evidence, contrary to law, and prejudicial.

We are of opinion that, under the doctrine of the cases cited below, the charge must be held general in effect upon the most material phase of the case; that is, as to the facts involving the conduct of the actors in the use of the street intersection at and just prior to the collision. See Texas & N. O. R. Co. v. Harrington (Tex. Com. App.) 235 S. W. 188; Humble v. McLean (Tex. Com. App.) 280 S. W. 557, 559; Houston v. Stribling (Tex. Civ. App.) 293 S. W. 890; Barnes v. International, etc., Co. (Tex. Com. App.) 1 S.W.(2d) 273; Radford v. Andrews (Tex. Com. App.) 15 S.W. (2d) 218.

In telling the jury that the traffic ordinance "conferred upon the defendant no right of way at any time or under any circumstances against such fire apparatus," the charge was upon the weight of evidence and prejudicial to appellants, in that, it was calculated to lead the jury to believe that the priority given the fire truck was absolute and existed at all times, and under all circumstances, without regard to the safety of others, or whether such priority was arbitrarily exercised or not. We think the charge was calculated to induce the jury to determine all affirmative and defensive issues, involving the question of negligence, against appellant.

Appellee insists, however, in view of the findings of the jury on special issues Nos. 4 and 5, to the effect that the motorman was negligent in failing to keep a lookout for the approach of the fire truck and that such negligence was a proximate cause, that the judgment should nevertheless be sustained, and that we should treat as immaterial, findings of the jury on all other issues of negligence. The same contention could, with equal plausibility, have been urged in regard to findings on issues Nos. 6, 7, and 8, to the effect that as the truck approached the street intersection, the siren thereon was being sounded, that the motorman was negligent in failing to hear its sound, and that such negligence was a proximate cause.

These findings would doubtless sustain the judgment, notwithstanding the vice in the special charge and the findings of the jury on other affirmative issues involving negligence, but for the bearing the erroneous charge had on defensive issue that involved the negligence, whether or not, of appellee and the driver of the truck. The evidence was conflicting on these issues, but was sufficient to sustain findings favorable to appellant had the jury so decided. We think therefore that the giving of the requested charge over appellant's objection was reversible error.

▆▆ Appellant assigns error on the refusal of the court to submit, at its request, the following charge on unavoidable accident, to wit: "Do you find and believe from a preponderance of the evidence that the collision in question did not result from an accident? Answer 'yes' or 'no.' Answer: ———. By the term 'accident' as used in the foregoing issue, is meant an event which occurs without negligence upon the part of either plaintiff or defendant."

Appellee insists that the court did not err in refusing to give the requested instruction, because unavoidable accident was incorrectly defined, that the facts relied upon to show that the casualty was an unavoidable accident should have been grouped, instead of requesting the issue in the abstract, thus permitting the jurors to make their own grouping; that the charge, in the form requested, is in essence and meaning upon the weight of evidence; that a verdict, under the definition, finding the existence of an unavoidable accident would be indeterminate as to who was in fact without negligence.

The issue of unavoidable accident having been customarily submitted, substantially as was done in the instant case, without pro-

voking criticism, we are not prepared to hold that its abstract form alone justified its refusal, although a more satisfactory definition, in our opinion, was given in Vesper v. Lavender (Tex. Civ. App.) 149 S. W. 377, 380, as follows: "By accident is meant such an unexpected catastrophe as occurs without any one being to blame for it: that is, without anybody being guilty of negligence in doing or permitting to be done or omitting to do the particular thing that caused such casualty." We commend this definition as more satisfactory than the abstract form used in the instant case. (The writer is also of opinion that the facts relied upon, as presenting the issue of unavoidable accident, should be grouped as in other instances, and submitted distinctly and separately as required by article 2189, R. S.; Bailey v. Woodrum Truck Lines (Tex. Civ. App.) 36 S.W.(2d) 1090, 1093, par. 3.)

In the charge requested, "accident" is defined as "an event which occurs without negligence on the part of either plaintiff or defendant." Appellee contends that the use of the word "either" in the charge means one or the other, and not both, therefore that a verdict finding the existence of an unavoidable accident would be indeterminate as to who was free from fault. The word "either" is used in different connections, in some it means one of two, the one or the other, but in others, as we believe in the instant case, the word means both; that is, the one and the other. See Webster's New International Dictionary; The Century Dictionary; Chicago, etc., Co. v. Chicago, 172 Ill. 66, 68, 49 N. E. 1006, 1007; Jackson v. Stewart; 20 Ga. 120, 124; Chidester v. Springfield, 59 Ill. 87, 89; Harrington's Sons Co. v. U. S. Express Co., 87 N. J. Law, 154, 93 A. 697.

We think the facts raised the issue of unavoidable accident, and that the requested charge should have been given. The rule is well settled that no presumption will be indulged, from finding of the jury on affirmative and defensive issues of negligence, that the jury might not have found differently, on the issue of accident, if submitted distinctly and separately. See Galveston, H. & S. A. Ry. Co. v. Washington, 94 Tex. 510, 63 S. W. 534; Colorado & S. Ry. Co. v. Rowe (Tex. Com. App.) 238 S. W. 908, 910.

Aside from facts that involved the alleged negligence of the defendant, the plaintiff, and of the driver of the truck, the jury could have found from the evidence that, after discovering the impending collision, the driver of the truck did all within his power to avert the catastrophe, by applying brakes, at a distance of some 30 to 40 feet back from the line of Main street (from 50 to 70 feet from the point of the collision); that notwithstanding this precaution, the driver lost control of the truck; that it skidded from 40 to 50 feet (according to the testimony of one witness); that the driver made no effort to steer the car to the east and around the end of the street car, because there was not room to turn and an attempt to do so, under the circumstances, would doubtless have resulted in capsizing the truck.

Without comment, we express the opinion that this evidence raised the issue of unavoidable accident, and that the court erred in refusing to submit the issue to the jury. See Galveston, H. & S. A. Ry. Co. v. Washington, 94 Tex. 510, 63 S. W. 534; Dallas Ry. Co. v. Speer (Tex. Civ. App.) 299 S. W. 507, 511; Colorado & S. Ry. Co. v. Rowe (Tex. Com. App.) 238 S. W. 908, 910; Suttle v. Texas Elec. Ry. (Tex. Civ. App.) 272 S. W. 256; Louisiana Ry. & Nav. Co. v. Reynolds (Tex. Civ. App.) 278 S. W. 954; Humble, etc., Co. v. Kincaid (Tex. Civ. App.) 19 S.W.(2d) 144, 148; Rosenthal v. Hillebrandt (Tex. Com. App.) 7 S.W.(2d) 521.

We have carefully considered all assignments and propositions urged by appellant, and with the exception of those sustained, they are overruled. Because of the errors hereinbefore pointed out, the case is reversed and remanded for further proceedings.

Reversed and remanded.