**Terry Lee PARK, Appellee,**

v.

**Juanita Marlene PARK, Appellant.**

No. 51657.

Court of Appeals of Oklahoma, Division 2.

April 15, 1980.

Released for Publication by Order of Court of Appeals May 8, 1980.

Phillip R. Scott, Waurika, for appellee.

David J. Bailey, Cantrell, Gust & Morris, Midwest City, for appellant.

BRIGHTMIRE, Presiding Judge.

The nine year marriage of Terry Park and his 28-year-old wife, Juanita, was dissolved October 19, 1977. The woman appeals complaining that the Jefferson County court (1) was without jurisdiction to hear the case; (2) abused his discretion in granting custody of the couple's two minor children to the father without finding her unfit; (3) should not have granted the man a divorce; and (4) divided the marital estate inequitably.

I

■ The woman's first contention is founded on her assumption of two facts: (1) she was not a resident of Jefferson County, and (2) her husband had resided there less than 30 days when he filed this action. Her conclusion is that one of such conditions had to exist in order for the Jefferson County court to have venue under the terms of 12 O.S.1971 § 1272.1.

The first assumed fact is true. Defendant lived in Cleveland County when this lawsuit was commenced. The other assumed fact, however, was found by the court to be untrue. Plaintiff Terry Park testified he moved to the town of Waurika in Jefferson County on June 29, 1977—and later brought his children there—with the intention of establishing a permanent residence as a prelude to filing this action after 30 days had elapsed. On August 4, 1977— some 37 days after the move—Terry Park filed this case. Under these circumstances the trial court's finding that the statutory 30 days residency requirement was satisfied is not clearly against the weight of the evidence.

II

■ Juanita Park's second assignment of error—that the children's custody should not have been confided in the father—is also without merit. Contrary to what she argues, it is not necessary that a mother be found to be unfit in order for the court to place the children's custody in their father any more than it would be necessary to find the father is unfit as a prerequisite to awarding custody to the mother. For as she correctly points out, neither of the divorcing parties is entitled to custody of their children as a matter of right [1] and, in arranging for a child's care, the court is obliged to give paramount consideration to what appears to be in the young person's best interest in terms of his temporal, mental, and moral welfare.[2]

■ The high court has infused into our divorce law part of the criteria prescribed in 30 O.S.1971 § 11 for the court to follow in awarding custody of a minor child and ap-

---

1. *Guess v. Guess*, Okl., 274 P.2d 369 (1954).

2. *Duncan v. Duncan*, Okl., 449 P.2d 267 (1969); *Earnst v. Earnst*, Okl., 418 P.2d 351 (1966).

pointing a general guardian. "As between parents adversely claiming the custody or guardianship," reads the guardian and ward statute, "neither parent is entitled to it as of right, but, other things being equal, if the child be of tender years, it should be given to the mother; if it be of an age to require education and preparation for labor or business, then to the father." But even though the supreme court has applied the "tender years" integrant a time or two,[3] it has not yet rejected the last clause of the statute specifying that the child be given to the father once it advances beyond the "tender years" plateau—a vague and indistinct age level. Moreover, the Oklahoma Supreme Court's latest pronouncement regarding the applicability of nondivorce statutes in divorce cases[4] casts some doubt on the viability of *Irwin* and *Waller* and *Gordon*[5]—cases in which the nondivorce statute 30 O.S.1971 § 11 was applied to divorce matters.

At the time of trial the parties' two boys were ages five and eight and both in school. The mother—whose faithfulness and devotion to marital duties were seriously deficient—testified that the father was "a very good" one, was "interested in his kids and what they do," was "active with them," "takes them places" and "does things with them." Although the mother said she also loved her children the trial court rightfully found her past conduct demonstrated a general lack of concern for them. Three weeks before the temporary custody hearing, for instance, the father had taken the children to Waurika and was to return them to the mother a week and a half prior to the August 17 hearing. He did not return them but instead arranged for the mother to visit them at a cousin's house on the day of the hearing. Not only did the mother not try to locate them when they failed to return

on time but she visited with them only about 30 minutes when she next saw them on August 17, then left and did not see them again until Labor Day when she visited with them but briefly two different times during the day. Other evidence indicated that the care arranged for by the father was superior to that contemplated by the mother.

And so the result is that even if the "tender years" rule is applicable, the trial court was justified in awarding custody to plaintiff since there was sufficient evidence that the children were not of "tender years," "other things [were not] . . . equal," the boys were both of an age to require education, and that the youngsters were better off living with their father than their mother.

### III

■ The appealing woman also objects to the court granting a divorce only to the man and not to her also because one basis found to exist by the court was incompatibility—a ground connoting mutual contribution of the parties to the marital collapse. So far as the stated characteristic of incompatibility is concerned the woman is correct. And she is also correct when she says a divorce granted on such finding should ordinarily be granted to both parties.[6] But her conclusion that that principle operated in this instance to require an award of a divorce to her as well as her husband is not correct. Here the court found that plaintiff was *entitled* to a divorce on three bases— "extreme cruelty, gross neglect of duty and incompatibility"—and proceeded to grant him one. The particular ground upon which the dissolution was actually *awarded*, however, was not specified but it may be assumed that it was not incompatibility—

3. *Gordon v. Gordon*, Okl., 577 P.2d 1271 (1978), cert. denied 439 U.S. 863, 99 S.Ct. 185, 58 L.Ed.2d 172 (1978); *Waller v. Waller*, Okl., 439 P.2d 952 (1968); *Irwin v. Irwin*, Okl., 416 P.2d 853 (1966).

4. *LeCrone v. LeCrone*, Okl., 596 P.2d 1262 (1979) holding that a statute relating to child support, 10 O.S.Supp.1975 § 4, was inappropri-

ately applied in a divorce case because it did not refer to divorces and that our divorce statutes are plenary.

5. *Irwin v. Irwin, Waller v. Waller, Gordon v. Gordon, supra* note 3.

6. *Hughes v. Hughes*, Okl., 363 P.2d 155 (1961).

the only foundation for a divorce alleged by defendant—since the court declined to grant the woman a divorce also.

In any event the more important thing is that the bonds of matrimony were validly severed and upon findings sustained by the evidence. The decree is in this respect without error.

## IV

 Juanita Park's last complaint is that the court divided the property inequitably. The short answer to this one is that the court divided the personal property as requested by the woman. The major asset— the parties' home—was ordered sold and distribution of the proceeds was to be made later when it could be determined what net equity would be realized. At the request of the woman the state supreme court stayed such distribution until after disposition of this appeal. Under these circumstances we are unable to find a legal basis for disturbing the decree.

Affirmed.

BACON and NEPTUNE, JJ., concur.